UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRAVIS TARLTON, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:19-CV-723-PPS-MGG |
| BO HOLCOMB, *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

Travis Tarlton, a prisoner without a lawyer, proceeds on a Fourteenth Amendment claim against Sheriff Hassel, Sergeant Holcomb, and Captain Butts for subjecting him to overcrowded conditions at the Marshall County Jail in July 2019, which forced him to sleep on the floor and to sit on the toilet and floor to eat meals, and for placing him on lockdown in August 2019. The defendants filed a motion for summary judgment, arguing that they had limited personal involvement with Tarlton's living conditions and that these conditions were not objectively unreasonable..

The defendants also provided Tarlton with the summary judgment notice required by N.D. Ind. L.R. 56-1 and a copy of both Federal Rule of Civil Procedure 56 and Local Rule 56-1. ECF 23, ECF 28. The notice informed Tarlton of the consequences of forgoing a response. It advised that, unless he disputed the facts presented by the defendants, the court could accept those facts as true. *See* Fed. R. Civ. P. 56(e). It further advised that a lack of response could result in the dismissal of his case. *See* Fed. R. Civ. P. 56(a). Nevertheless, Tarlton did not file a response.

## FACTS

In support of the motion for summary judgment, Matt Hassel, the sheriff of Marshall County, submitted an affidavit, attesting as follows. ECF 22-1. The Marshall County Jail has 233 permanent beds. From 2017 to 2018, the average daily population of the jail rose sharply from 153 inmates to 210 inmates. As early as the fall of 2018, Sheriff Hassel developed concerns about the potential for overcrowding and met with other local governmental officials, including judges, the county council, and the county prosecutor, in an effort to find a solution, and the local governmental officials pursued substantial measures toward that end. Despite these efforts, the inmate population continued to rise in 2019 with the average daily inmate population first exceeding the permanent bed capacity in March, peaking in August with 292 inmates, and never falling below 232 inmates. However, in 2020, the average daily population began to fall, dropping below two hundred inmates by April and not rising above that average since.

Andrew Holcomb, chief jail officer at the Marshall County Jail, also submitted an affidavit (ECF 22-2), attesting that the overcrowded conditions culminated in the June 2019 decision[1] to assign one inmate to sleep on a six-inch thick mat on the floor in each of the jail's four-man cells, which was the largest cell available in the jail. While these floor assignments placed some limitations on inmates' movement within their cells, inmates could still navigate without making physical contact with the floor assignee if

---

[1] Jail staff accommodated the surplus inmate population by using intake cells prior to this time. ECF 22-2 at 2.

they were careful.[2] Inmates were also free to move about the dayroom, except at night between 10:00 p.m. and 7:00 a.m. and during a brief lockdown each afternoon for count. Though inmates in these pods outnumbered the available seats at the dayroom tables, inmates were allowed to eat meals on their bunks or while standing or to wait until a seat became available. Jail staff also modified other areas of the jail to address the additional housing needs and ordered portable bunks so that inmates would no longer have to sleep on a mat on the floor.

Sergeant Holcomb attests that Tarlton was assigned to a four-man cell on July 17, 2019.[3] On August 29, 2019, Officer Crawford placed Tarlton and his cellmates on lockdown for fourteen days for flooding the housing pod. ECF 22-4. While Tarlton filed a grievance about people sleeping on the floor and there not being enough seats to eat at, there is no evidence that this grievance worked its way up to the individual defendants in this case. ECF 22-2 at 66. None of the defendants received any complaints from Tarlton regarding his living conditions or the lockdown. ECF 22-1, ECF 22-2, ECF 22-3.

## STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a

---

[2] Sergeant Holcomb attached photographs of this arrangement, and they are consistent with the description in his affidavit. ECF 22-2 at 9-16.

[3] The defendants do not provide a date to indicate when this assignment ended or how long five inmates remained in the cell, but the record reflects that Tarlton had transferred to another facility by October 2020. ECF 24, ECF 26.

3

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

## DISCUSSION

Tarlton asserts a Fourteenth Amendment claim against Sheriff Hassel, Sergeant Holcomb, and Captain Butts for subjecting him to overcrowded conditions at the Marshall County Jail in July 2019, which forced him to sleep on the floor and to sit on the toilet and floor to eat meals, and for placing him on lockdown in August 2019. "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that amount to punishment." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quotation marks and citation omitted). "[P]unishment can consist of actions taken with an expressed intent to punish," or, "in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (internal quotation marks omitted). To prevail on such a claim, a plaintiff must show that the defendants' conduct was

4

objectively unreasonable based on the facts and circumstances of his particular case. *Id.* at 397-98; *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). For Section 1983 claims against individuals, "[l]iability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

To start, the record demonstrates that the defendants were generally aware of the crowded conditions at the jail but contains no evidence that they were aware of Tarlton's specific living conditions. Further, the record demonstrates that the defendants responded reasonably to the crowded conditions by coordinating with local governmental officials to reduce the inmate population during year before the jail exceeded its permanent bed capacity. These efforts consisted of releasing inmates on bond, reducing sentences, and expediting criminal proceedings by establishing a new court and by hiring more prosecuting attorneys. With these substantial measures, they were able to reduce the inmate population below the permanent bed capacity within one year. They also attempted to reach an agreement with another county jail, though this effort was unsuccessful, and sought funding for a jail expansion, though an expansion no longer appears to be necessary due to the decreased inmate population throughout 2020. Further, the efforts to reduce the inmate population understandably took some time, and the defendants reasonably addressed the overcrowded conditions during the interim period by placing an additional inmate in their largest cells and by modifying various areas of the jail to include beds for the surplus inmate population.

Additionally, the record contains no evidence to suggest that the crowded conditions warranted more extreme measures. The photographs of the floor bunk arrangement demonstrate that the sleeping conditions were not so unreasonable as to constitute punishment. Similarly, no reasonable jury could find that the insufficient number of seats at the dayroom table violated Tarlton's constitutional rights given that he could sit on his bunk, stand, or wait for an open seat in the event that he was unable to immediately obtain seating at the table during a particular meal. Finally, the record contains no evidence to suggest that the defendants were personally involved with placing Tarlton on lockdown in August 2019.

On this evidentiary record, no reasonable jury could conclude that the defendants' response to the crowded conditions was objectively unreasonable, that the crowded conditions violated Tarlton's constitutional rights, or that the defendants were personally involved with placing him on lockdown. Therefore, Tarlton's motion for summary judgment is denied, and the defendants' motion for summary judgment is granted with respect to the Fourteenth Amendment claim against Sheriff Hassel, Captain Butts, and Sergeant Holcomb. No other claims remain in this case.

For these reasons, the Court:

(1) GRANTS the defendants' motion for summary judgment (ECF 21); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and to close this case.

ENTERED:  February 19, 2021.

                                          /s/   Philip P. Simon
                                          PHILIP P. SIMON, JUDGE
                                          UNITED STATES DISTRICT COURT